IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
MONTGOMERY DIVISION

RECEIVED
2015 JUN -8  P 2: 21
DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br>Plaintiff,<br><br>V.<br><br>OUTOKUMPU STAINLESS USA, LLC<br>Defendant. | **COMPLAINT**<br>**JURY TRIAL**<br>**DEMAND**<br><br>2:15-CV-405-WHA-CSC |

## NATURE OF THE ACTION

This is an enforcement action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e, *et. seq.*, and Title I of the Civil Rights Act of 1991, 42 U.S.C. §1981a, to correct unlawful employment practices on the basis of race (Black), and to provide appropriate relief to Wallace Dubose ("Dubose"), Daniel Nickelson ("Nickelson"), Steven Jones ("Jones"), Victor Oliver ("Oliver"), (collectively, "the Charging Parties"), and a class of at least one other Black employee ("the Class") who were adversely affected by such practices. As alleged with greater particularity in paragraphs ten (10) through thirteen (13) below, the Equal Employment Opportunity Commission alleges that Outokumpu Stainless USA, LLC violated Title VII by subjecting the Charging Parties and the

Class to race discrimination when it failed to promote them to available Team Leader positions.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e-5(f)(1) and (3)("Title VII"), and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Middle District of Alabama, Montgomery Division.

## PARTIES

3. Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII, and is expressly authorized to bring this action by Section 706(f)(1) and (3) of Title VII, 42 U.S.C. Section 2000e-5(f)(1) and (3).

4. At all relevant times, Defendant Outokumpu Stainless USA, LLC ("Outokumpu" or "Defendant"), a foreign limited liability company incorporated

in Delaware, has continuously been doing business in the State of Alabama and the City of Calvert, and has continuously had at least 15 employees.

5. At all relevant times, Defendant Outokumpu has continuously been an employer engaged in an industry affecting commerce within the meaning of Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e (b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

6. More than thirty days prior to the institution of this lawsuit, the Charging Parties filed charges of discrimination with the Commission alleging violations of Title VII by Defendant Outokumpu.

7. On February 11, 2015, the Commission issued to Defendant Outokumpu four Letters of Determination finding reasonable cause to believe that Title VII was violated with respect to each of the Charging Parties and other African American employees and invited Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and to provide appropriate relief.

8. On March 5, 2015, the Commission issued to Defendant Outokumpu four Notices of Failure of Conciliation advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement for each Charging Party and a class of African American employees acceptable to the Commission.

9. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

10. Since at least April 2013, Defendant Outokumpu has engaged in unlawful employment practices at its plant in Calvert, Alabama ("the Plant") in violation of 703(a)(1) of Title VII, 42 U.S.C. Section 2000e-2(a)(1). As described with greater particularity below, Defendant subjected Charging Parties and a class of at least one other Black employee to discriminatory employment practices when Defendant failed to promote them to one of six available first line-supervisor positions that were available at its Calvert facility:

    a. Defendant owns and operates a steel processing plant in Calvert, Alabama (the "Calvert Plant"), which it purchased in or around December 2012 from ThyssenKrupp Stainless USA.

    b. At the time of the purchase, the Charging Parties were already employed in various line operator positions at the Calvert Plant.

    c. Dubose began his employment at the Calvert Plant on or around August 18, 2008, as an Entry Operator on the Annealing and Pickling Line ("APL").

    d. Nickelson began his employment at the Calvert Plant on or around February 21, 2011 as an Entry Operator on the APL.

    e. Jones began his employment at the Calvert Plant on or around September 12, 2011 as an Entry Operator on the APL.

f. Oliver began his employment at the Calvert Plant on or around December 10, 2010 as an Operator on the APL.

g. Defendant continued to employ each of the Charging Parties after it took over operations of the Calvert Plant.

h. On or about April 2, 2013, Defendant posted four (4) openings for Team Leaders for the APL. While only four (4) openings were advertised, Defendant ultimately promoted six (6) employees to APL Team Leader positions due to staffing changes that occurred during the selection process.

i. The APL Team Leader position is an hourly management position at the Calvert Plant.

j. The responsibilities of an APL Team Leader included coordinating the activities of the shift and supervising personnel on the APL.

k. The relative work experience requirements for the APL Team Leader position included various physical requirements, as well as prior line experience, people management experience and computer literacy.

l. In order to be considered for the APL Team Leader position, Defendant required individuals to complete and submit a Job Opportunity Form, along with a current resume by the closing date of the job posting.

m. Candidates who met the minimum qualifications for the APL Team Leader position were interviewed by a panel of management personnel (the "interview panel").

n. The candidate pool for the APL Team Leader position consisted of twenty-one candidates, of which only five (5) were Black.

o. The interview panel ranked each candidate as "A, B or C", with "A" candidates being highly considered, and those with "B" and "C" rankings, respectively, followed in consideration.

p. Each of the Charging Parties and member of the Class applied for the Team Leader position, met the minimum qualifications for the Team Leader position, and Defendant interviewed all of them during the relevant time frame.

q. At the time Defendant Outokumpu conducted interviews for the APL Team Leader positions, each Charging Party and member of the Class possessed relevant management and work experience, including significant experience on the APL line.

r. During the interviews, each Charging Party and member of the Class answered questions posed by the interview panel and described their relative experience and qualifications for the APL Team Leader position.

    s. Outokumpu selected substantially less qualified White candidates for each and every available APL Team Leader position during the relevant time frame.

    t. The successful APL Team Leader candidates lacked many of the skills and experience described in the APL Team Leader job posting.

    u. Outokumpu did not promote the Charging Parties or any member of the Class into any of the APL Team Leader positions because of their race, Black.

11. The effects of the practices complained of in paragraphs 10 a through u above has been to deprive Charging Parties and a class of at least one other Black employee equal employment opportunities and has otherwise adversely affected their status as employees because of their race, Black.

12. The unlawful employment practices complained of in paragraphs 10 a through u above were intentional.

13. The unlawful employment practices complained of in paragraphs 10 a through u above were done with malice or with reckless indifference to the federally protected rights of the Charging Parties and the Class.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A. Grant a permanent injunction enjoining Defendant Outokumpu, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in discrimination based on race, including failing to promote employees.

B. Order Defendant Outokumpu to institute and carry out policies, practices, and programs which provide equal employment opportunities for Black employees, and which eradicate the effects of their past and present unlawful employment practices.

C. Order Defendant Outokumpu to make Charging Parties and the Class whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices including, but not limited to, reinstatement or front pay in lieu thereof.

D. Order Defendant Outokumpu to make whole Charging Parties and the Class by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices complained of in paragraphs 10 a through u above including, but not limited to, relocation expenses, job search expenses, and medical expenses, if applicable, in amounts to be determined at trial.

E. Order Defendant Outokumpu to make whole Charging Parties and the Class by providing compensation for past and future nonpecuniary losses resulting from

the unlawful practices complained of in paragraphs 10 a through u above including, but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, and other non-pecuniary losses in amounts to be determined at trial.

F. Order Defendant Outokumpu to pay Charging Parties and the Class punitive damages for its malicious and reckless conduct described in paragraphs 10 a through u above in amounts to be determined at trial.

G. Grant such further relief as the Court deems necessary and proper in the public interest.

H. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Dated this 8th day of June, 2015.

RESPECTFULLY SUBMITTED,

P. David Lopez
General Counsel

James L. Lee
Deputy General Counsel

Gwendolyn Young Reams
Associate General Counsel

U.S. Equal Employment Opportunity Commission
131 M. Street E
Washington, DC 20507

C. EMANUEL SMITH (MS Bar # 7473)
Regional Attorney

*/s/ Marsha Rucker*

MARSHA RUCKER (PA Bar #90041)
Supervisory Trial Attorney
(205) 212-2046
marsha.rucker@eeoc.gov

**U.S. Equal Employment Opportunity Commission**
Birmingham District Office
Ridge Park Place, Suite 2000
1130 22nd Street, South
Birmingham, Alabama 35205
Telephone: (205) 212-2045
Facsimile: (205) 212-2041